UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

PAIGE PORTIER MCGEHEE, O/B/O          CASE NO.  2:17-CV-01372
MINOR CHILDREN, CJM & RJM, IV

VERSUS                               JUDGE JAMES D. CAIN, JR.

WAL-MART LOUISIANA L L C ET AL       MAGISTRATE JUDGE KAY

MEMORANDUM RULING

Before the Court is "Wal-Mart's Motion for Partial Summary Judgment on Defense

and Indemnity" (Doc. 73) wherein Defendants and Cross-Claimants, Wal-Mart Louisiana,

LLC and Wal-Mart Stores, Inc. (collectively referred to as "Wal-Mart") move for partial

summary judgment as to the following:

> (1) Sealand Mechanical, LLC ("Sealand") is contractually obligated
> under the Master Services Agreement ("MSA") to provide a defense,
> indemnify, and insure Wal-Mart for claims arising out of the services
> performed by Sealand on Wal-Mart's premises since the date of Wal-Mart's
> demand on November 3, 2016;
>
> (2) Sealand breached its contractual duty under the MSA contract to
> provide a defense and to indemnify Wal-Mart (against any ultimate
> judgment);
>
> (3) Sealand breached its contractual duty under the MSA to insure
> Wal-Mart "with minimum limits of at least $1,000,000 per occurrence and
> $2,000,000 aggregate," and "provide defense coverage as an additional
> benefit and not within the limits of liability;"
>
> (4) Wal-Mart is an additional insured under the AGCS Marine
> Insurance Company ("AGCS") policy; and

(5) AGCS is liable *in solido* with Sealand to provide Wal-Mart with a defense to the claims asserted against it since the date of demand on November 3, 2016.

## **FACTUAL STATEMENT**

On October 25, 2019, this Court ruled that the contractual defense, indemnification, and insurance provisions of the Master Services Agreement ("MSA") entered between Wal-Mart and Sealand Mechanical, LLC ("Sealand") are valid and enforceable under both Arkansas and Louisiana law.[1] The MSA provides that Sealand agreed to "protect, defend, hold harmless, and indemnify Wal-Mart against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs) that may be asserted...."[2]

Raymond McGehee, III, a licensed Sealand electrician, was electrocuted on September 26, 2016, in the course and scope of his employment while replacing a light ballast in a Wal-Mart store. The claims asserted against Wal-Mart arose from "death of, or injury to, any person, [...] resulting or alleged to result in whole or in part from the Services of this Agreement," and from an "act, activity, or omission of Contractor or any of its employees, representatives, or agents, including but not limited to, activities on Walmart's premises and Contractor's use of any vehicle, equipment, fixture, or material in connection with the Services of this Agreement."[3]

---

[1] Docs. 63 and 64.; Sealand contends that the ruling is interlocutory and thus may be revisited at any time.
[2] Exhibit D, ¶ 9; Docs. 47-7 and 49-5; Exhibit E, pp. 85-87, Doc. 49-6.
[3] Wal-Mart exhibits A, A-1, B, and D, ¶ 9(b), 9(d).

The MSA provides that Sealand "shall keep in full force and effect certain minimum insurance coverage,"[4] in pertinent part, as follows:

> (a)   Commercial   General   Liability   insurance including Contractual Liability, Personal and Advertising Injury Liability, Products-Complete Operations Liability, Medical Payments, Bodily Injury and Property Damage Liability with minimum limits of at least $1,000,000 per occurrence and $2,000,000 aggregate.[5]

Sealand contends that this provision is void and unenforceable. Sealand produced a Certificate of Insurance to Wal-Mart Stores, Inc. under its AGCS policy number GMG-NO-0216242.[6] The AGCS [7] Declarations' page designates Galliano Marine Service, L.L.C. as the named insured and further indicates Sealand as a named insured.[8] The AGCS Policy states the following as to "Blanket Additional Insured:"

> In consideration of the premium charged, it is agreed that this policy shall include as additional insureds any person or organization to whom the named insured has agreed by contract or agreement to provide coverage, but only with respect to operations performed by or on behalf of the named insured and only with respect to occurrence subsequent to the making of such contract or agreement.[9]

The AGCS policy provides:[10]

> 1. Our obligation under the insurance provided, to pay damages, medical payments and "defense costs' on your behalf applies only to the amount of damages, medical payments and "defense costs" in excess of any deductible amounts stated in the Declarations or attached Schedules(s).[11]

---

[4] Wal-Mart exhibit D, ¶ 10.
[5] Id.
[6] Wal-Mart exhibit F.
[7] Wal-Mart exhibit G, pp. 4,8,15; Wal-Mart exhibit F; see also Docs. 47-6, 49-4, 47-2, p.6.
[8] Wal-Mart exhibit G, pp. 1 and 8.
[9] Id. p. 15.
[10] Wal-Mart exhibit G, pp. 22, 32.
[11] Id. p. 22.

On that same page, under **DEDUCTIBLES,** the policy states in pertinent part:

> **3.** The terms of this insurance, including those with respect to:
>
> > **a.** Our right and duty to defend any "suits" seeking those damages; and
> > **b.** Your duties in the event of an "occurrence", claim, or "suit" apply irrespective of the application of the deductible amount.[12]

Wal-Mart made demand upon Sealand and its insurer, AGCS on November 3, 2016, to defend and indemnify Wal-Mart for Plaintiff's claims for her husband's death at Wal-Mart.[13] Wal-Mart re-urged its demand to Sealand on December 27, 2016.[14] Wal-Mart demanded a defense directly from AGCS on December 27, 2016, and on March 6, 2017.[15] On April 3, 2017, Sealand refused to defend or indemnify Wal-Mart.[16]

On September 20, 2017, Plaintiff filed suit in state court individually and on behalf of her two minor children.[17] Wal-Mart answered, expressly asserting the liability of Sealand for its negligent acts and/or omissions while performing services on Wal-Mart's premises pursuant to the MSA.[18] The case was subsequently removed to this Court on October 25, 2017.[19] Wal-Mart asserted a Third-Party Demand on November 15, 2018, against Sealand and its insurer, AGCS, for defense and indemnity, specifically pleading that "Sealand owes Wal-Mart a fully paid defense throughout this litigation even prior to

---

[12] Wal-Mart exhibit G, pp. 22, 32.
[13] Wal-Mart exhibits A, A-1, A-2.
[14] Wal-Mart exhibits A, A-4.
[15] Wal-Mart exhibits A, A-3, A-5.
[16] Wal-Mart exhibits A, A-6.
[17] Wal-Mart exhibit B, ¶ ¶ 5,7.
[18] Wal-Mart exhibit C, ¶ XII.
[19] Doc. 1.

any judgment," and further, that "Sealand and AGCS are liable to Wal-Mart for any and all sums which Wal-Mart may be cast in judgment in the main demand," including "all litigation costs, court costs, losses, expenses, and attorney's fees incurred and/or to be incurred in the future, all in accordance with the above-referenced Master Services Agreement."[20]

Wal-Mart pled that Sealand breached the MSA contract with Wal-Mart by obtaining a $900,000.00 deductible on its insurance policy with AGCS without Wal-Mart's permission. Wal-Mart demanded that Sealand be "legally responsible to pay all sums on behalf of Wal-Mart that it becomes legally obligated to pay which falls within the deductible amount of said CGL policy, including, but not limited to, any judgment amount awarded to Plaintiffs herein."[21]

Wal-Mart pled in its Third-Party demand that AGCS is legally obligated and has a duty to defend Wal-Mart as an additional insured in the present litigation, regardless of any applicable deductible amount on the policy, that AGCS breached this duty, and was arbitrary and capricious in doing so, entitling Wal-Mart attorney fees, and legal expenses and costs incurred, plus legal interest.[22] Wal-Mart made demand again upon Sealand on November 27, 2017,[23] and re-urged its demand directly upon AGCS on May 23, 2018.[24]

---

[20] Doc. 31, ¶ ¶ III – VII.
[21] Doc. 31, ¶ ¶ XIV-XV.
[22] Doc. 31, ¶ ¶ IX- XIII, XVI, XVII.
[23] Wal-Mart exhibits A, A-7.
[24] Wal-Mart exhibits A; A-8.

AGCS denied Wal-Mart's demand and continues to do so;[25] Sealand has also denied

Wal-Mart's demand.[26] In a letter dated December 6, 2019, AGCS counsel wrote to Wal-

Mart's counsel the following:

> In light of the court's ruling on AGCS Marine's Motion for Summary Judgment, AGCS Marine Insurance Company ("AMIC") has determined that a defense of Wal-Mart is triggered under policy number GMG-NO-0216242 issued to Sealand Mechanical.

> However, as you know, the policy contains the following deductible, stated in the Declarations:

> **7. DEDUCTIBLES:** $900,000.00 any one accident or occurrence.

> Regarding the deductible, the policy provides as follows in the GENERAL CONDITIONS section of the COMMON CONDITIONS:

> **B. DEDUCTIBLES**

> **1.** Our obligation under the insurance provided, to pay damages, medical payments and "defense costs" on your behalf applies only to the amount of damages, medical payments and "defense costs" in excess of any deductible amounts stated in the Declarations.

> In light of the policy deductible, AMIC does not owe the cost associated with the defense until the deductible is exhausted.[27]

Wal-Mart has incurred $98,793.00 in costs, expenses, and attorney fees to defend

Plaintiff's claims as of November 3, 2016.[28]  Sealand contests this amount.

<u>SUMMARY JUDGMENT STANDARD</u>

A court should grant a motion for summary judgment when the movant shows "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[25] Wal-Mart exhibits A, A-10.
[26] Wal-Mart exhibits A, A-12.
[27] Wal-Mart exhibit A-11.
[28] Wal-Mart exhibit H.

as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

In its Motion for Summary Judgment, Wal-Mart seeks an affirmative ruling from the Court against Sealand as to the following:

(1) that Sealand is contractually obligated to provide a defense, indemnity, and insure Wal-Mart against the claims asserted by Plaintiff (and in the pending litigation) since the date of Wal-Mart's demand on November 3, 2016;

(2) Sealand breached its contractual duty to defend and indemnify Wal-Mart under the Arkansas MSA contract; and

(3) Sealand breached its contractual duty to insure Wal-Mart "with minimum limits of at least $1,000,000 per occurrence and $2,000,000 aggregate," and "provide defense coverage as an additional benefit and not within the limits of liability."

Wal-Mart also seeks a favorable ruling against AGCS, finding that

(1) Wal-Mart is an additional insured under the AGCS policy; and

(2) ACGS is liable *in solido* with Sealand to provide Wal-Mart with a defense since the date of demand on November 3, 2016.

Wal-Mart requests that both parties be ordered to pay all past and future defense costs, including attorney fees, plus legal interest from the date incurred.

*Sealand*

Wal-Mart argues that the clear language of the MSA obligates Sealand to defend it (which Sealand has refused to do), since November 3, 2016, when Plaintiff filed suit against Wal-Mart after the death of her husband while performing services on behalf of Sealand. Wal-Mart further notes that this Court previously ruled that the MSA is a valid and enforceable contract. Wal-Mart seeks a ruling that Sealand should be held liable for damages for breach of the MSA.

Sealand argues that (1)Wal-Mart forfeited its third-party claim by failing to timely assert its claim, (2) the defense and indemnity provision is null and void under the Louisiana Construction Anti-Indemnity Statute, (3) the defense and indemnity provision do not satisfy the clear and unequivocal standard necessary under Arkansas law, and (4) Sealand did not breach its contractual duty to insure Wal-Mart under the terms of the MSA.

*Timeliness of Wal-Mart's third-party demand and forum*

Relying on Section 16 of the MSA, Sealand argues that Wal-Mart failed to bring this action within two years in an Arkansas Court. That provision is as follows:

> 16.    <u>Governing law; Venue; Statute of Limitations</u>. This Agreement, all Scopes of Work, Work Orders, and any and all related disputes shall be governed by, enforced and construed in accordance with the laws of the State of Arkansas without regard to the internal law of Arkansas regarding conflicts of laws.  The Parties mutually consent and submit to the jurisdiction of the federal and state courts of Arkansas, and agree that any action, suit or proceeding concerning this Agreement or any Scope of Work shall be brought only in the federal or state courts of Arkansas. The Parties agree that they will not raise in defense or objections based upon lack of personal jurisdiction, improper venue, and/or inconvenience of forum.  Any legal action brought by either Party with respect to this Agreement or any Scope of Work shall be filed in one of the above referenced jurisdictions within two (2) years after the cause of action arises or it shall be deemed forever waived. The Parties acknowledge that they have read and understand this clause and agree willingly to its terms.

Sealand asserts that Wal-Mart received notice of Plaintiff's legal representation and her plan to assert a wrongful death claim in connection with her husband's death on

September 30, 2016. On November 3, 2016, Wal-Mart made a tender of defense and indemnity to Sealand which Sealand formally rejected on April 3, 2017.[29]

Plaintiff filed the instant wrongful death suit in state court on September 20, 2017. Plaintiff alleges that Wal-Mart's negligence was the sole and proximate cause of her husband's death. On November 15, 2018, Wal-Mart filed a Third-Party Complaint against Sealand and its insurer, AGCS Marine Insurance Company ("AGCS") seeking to enforce Sealand and AGCS's obligations under the MSA.

Sealand contends that Wal-Mart forfeited its right to assert any legal action against it because it did not institute an action against Sealand in an Arkansas court by at least September 30, 2018—two years after Wal-Mart learned that Plaintiff planned to assert a wrongful death suit against Wal-Mart. Therefore, Sealand maintains that Wal-Mart waived its rights to assert its claims under the MSA.

Wal-Mart notes that Sealand's CGL insurer, and Sealand's worker's compensation insurer, who are not parties to the MSA, have intervened into this lawsuit seeking reimbursement or indemnity against Wal-Mart. Wal-Mart further asserts that Plaintiff properly brought suit in Louisiana as the incident occurred in Louisiana.

Section 9 of the MSA entitled **"<u>Indemnification</u>"** requires Sealand to protect Wal-Mart's interests. Wal-Mart asserts that it filed its third-party complaint against Sealand and its insurer, AGCS on November 15, 2018, just over one year after suit was filed and within two years of Sealand's denial of Wal-Mart's April 3, 2017 tender of defense and indemnity.

---

[29] Sealand posited that the provisions relied upon by Wal-Mart were void as against public policy by application of La. Rev. Statute § 9:2780.1—the Louisiana Construction Anti-Indemnity Statute ("LCAIS").

Wal-Mart argues that forcing it to litigate its derivative contribution and indemnity claims against Sealand in Arkansas would frustrate judicial economy and inconvenience all the parties, as well as piecemeal this litigation.  See *Provence v. Nat'l Carriers, Inc.,* 2010 Ark. 27, 28, 360 S.W.3d 725, 729 (2010) (explaining that if enforcement of a forum clause would be unreasonable, the clause will not be binding).

Wal-Mart asserts that Arkansas Code Annotated § 16-61-202 permits a right of contribution among joint tortfeasors and Arkansas Rules of Civil Procedure Rule 14 expressly permits parties to avoid piecemeal litigation of related contribution and indemnity claims.   In addition, if Wal-Mart's contractual indemnity claims is dismissed or transferred, Wal-Mart would proceed separately in Arkansas and concurrently with the present action, ensuring two separate inquiries into liability arising from the same occurrence, fact, and relationship. Wal-Mart remarks that it would be absurd to require it to bring an action in Arkansas to asserts its claims for enforcement of the MSA obligations as suggested by Sealand.[30]

Federal Rule of Civil Procedure 14(a)(1) provides that a defending party may bring demand against any third party who is or may be liable or at fault for all or part of the claims. Thus, Wal-Mart was entitled to bring its claims for defense and indemnity against Sealand and its insurer in this action. Wal-Mart also notes that Sealand did not plead its defense of improper venue in its Answer in accordance with Federal Rule of Procedure 12.

---

[30] Wal-Mart notes that Plaintiff, AGCS, and ARCH, all non-parties to the MSA, are not required to litigate their issues in Arkansas.

The Court agrees with Wal-Mart. The instant lawsuit was filed by Plaintiff who is not a party to the MSA; neither is AGCS or the worker's compensation insurer (Arch) a party to the MSA.  The basis of Plaintiff's claims (wrongful death) does not arise out of the MSA. In other words, Wal-Mart's defense and indemnity claims are derivative of Plaintiff's claims. To that end, the Court finds that Wal-Mart's third-party complaint which is derivative of Plaintiffs claims is timely and this Court is the proper forum.

*Choice of law provisions*

Sealand requests that the Court reconsider its prior ruling that the LCAIS was not applicable because of the choice of law provision in the MSA.  Sealand remarks that because the Motion for Summary Judgment was filed by AGCS, it did not brief the issue of the applicability of the LCAIS.  Specifically, Sealand contends that the MSA is a construction contract and therefore the defense and indemnity provision is null, void and unenforceable under Louisiana Revised Statute 9:2780.1.

Sealand argues that the definition of a "construction contract" as defined by Louisiana Revised Statute 2780.1(A)(2)(a).[31] In other words, the work performed under the MSA to replace a ballast was maintenance and therefore, a construction contract. Sealand reminds the Court that its ruling concluded that changing the ballast was a routine service caused by normal wear and tear.[32]

---

[31] The statute defines a "construction contract" as any agreement for the "design, construction, alteration, renovation, repair, or maintenance of a building. . . ."
[32] Doc. 63, p. 10, relying on *360 International, Inc. v. GoMex Offshore, Ltd.,* 2019 WL 2852947 (W.D. La. 2019) (Mag. Judge Hanna).

Sealand argues that a ballast is a component part of a building, therefore replacing a ballast is maintenance. Sealand relies on *Equibank v. U.S. I.R.S.,* 749 F.2d 1176 (5th Cir. 1985), wherein the Fifth Circuit determined that antique chandeliers were component parts because of the wiring. Sealand suggests that replacing a ballast cannot be likened to replacing a light bulb because it requires expertise.

The Court disagrees. The parties to the MSA agreed that Arkansas law would apply. Again, Wal-Mart's claims are derivative of Plaintiff's claims and Plaintiff was not a party to the MSA.   For the reasons set forth in our prior ruling, the Court finds no basis in law to overturn our decision that the MSA is governed by the choice-of-law provision in paragraph 16.  Consequently, the Court reiterates that Arkansas law governs the MSA, and the LCAIS does not apply.

*The Indemnification provision is clear and unequivocal*

Sealand argues that because Plaintiff alleged that Wal-Mart was solely responsible for the death of her husband, the indemnity provision is unenforceable as a matter of Arkansas law and is void as against public policy. Under Arkansas law, the intention of an indemnitor to create an indemnity obligation for injuries cause by the sole negligence or wrongdoing of an indemnitee must be "expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed." *Pickens-Bond Const. Co. v. North Little Rock Elec. Co.,* 249 Ark. 389, 394, 459 S.W.2d 549, 553 (Ark.1970).

The Indemnification provision (§ 9) provides that Sealand "shall protect, defend, hold harmless and indemnify Walmart,. . . from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees

and court costs) that may be asserted by any person or any entity, regardless of the cause or alleged cause thereof . . . ."

Sealand relies on *Pickens-Bond Const. Co. v. North Little Rock Elec. Co.,* 249 Ark. 389, 402, 459 S.W. 2d 549, 557 (1970), wherein the court held that the plaintiff could not seek indemnification for its sole negligence because the clause did not contain the "clear and unequivocal" language required to enforce such an obligation. Wal-Mart agrees that if it is found solely liable, it would not be entitled to indemnity. Wal-Mart further notes that the conduct of Sealand (including as imputed from its employee, the deceased) in performing "the Services" under the MSA are an alleged cause of Plaintiff's damages.[33]

The Court finds that it would be premature at this stage of the proceeding to hold Sealand liable for indemnity, as it has not been determined who was at fault, or specifically, if Wal-Mart was solely at fault. For that reason, the Court will deny Wal-Mart's motion concerning its breach of contract claim for failure to provide indemnity.

However, the duty to defend is separate and much broader than the duty to indemnify for damage claims. *Lamar Advert. Co. v. Contl. Cas. Co.,* 396 F.3d 654, 660 (5th Cir. 2005). Under the "Eight Corners Rule, the insurer's duty to defend arises whenever the pleadings disclose the mere possibility of liability under the policy." *Martco Ltd. P'ship v. Wellons, Inc.,* 588 F.3d 864, 878 (5th Cir. 2009). The duty to defend analysis begins with an examination of whether any of the facts pleaded in the complaint possibly fall within matters covered under the insuring clause. *Id.* This duty exists unless every allegation of

---

[33] Doc. 17, Wal-Mart Answer, ¶¶ XI, XII .

the complaint unambiguously falls within a policy exclusion. *Id.* at 872, 875 (citing *Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1250 (La. 2/22/07). Moreover, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy, *Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La. 1987) and the allegations in the complaint are liberally interpreted in determining whether they set forth grounds that bring the claim within the scope of the insurer's duty to defend. *Yount v. Maisano,* 627 So.2d 148, 153 (La. 1993) (citing *American Home Assurance Co., et al, v. M. J. Czarniecki,* 230 So.2d 253 (La. 1969).

Plaintiff's complaint alleges that this litigation arose out of operations performed by and on behalf of Sealand. The MSA provides that Sealand agreed to ***protect and defend*** Wal-Mart against any all lawsuits for up to $1,000,000.[34] Sealand obtained insurance that included coverage for defense, however, Sealand's insurance coverage was subject to a $900,000 deductible. Wal-Mart is an additional insured under the Blanket Additional Insured provision;[35] therefore, as an additional insured Wal-Mart is entitled to a defense by both Sealand and AGCS.  In effect, the AGCS policy failed to comply with the terms and conditions to which Sealand was obligated. Consequently, the Court must decide who is responsible for the $900,000 deductible.

*Sealand's obligation to provide $1,000,000 coverage per occurrence*

The Court will consider Wal-Mart's request that the Court rule that Sealand was obligated under the MSA to provide a minimum of at least $1,000,000 per occurrence and

---

[34] Wal-Mart exhibit D, ¶ 9, **Indemnification.**
[35] See discussion below.

$2,000,000 aggregate liability coverage, and that Wal-Mart is an additional insured under the AGCS policy.

Concerning Sealand's obligation to provide liability insurance, the MSA provides for minimum limits of at least $1,000,000 per occurrence and $2,000,000 aggregate. This simply means that Sealand agreed to provide liability insurance coverage for $1,000,000 per occurrence; Sealand also agreed to name Wal-Mart as an additional insured.

Sealand complains that the MSA is devoid of any language that would prohibit it from obtaining a deductible on its CGL policy noting that the MSA is silent as to which party is responsible for any such deductible. Thus, Sealand argues that is cannot be held to be in breach of a contractual provision that is non-existent and that the MSA is ambiguous.

The MSA required that Sealand provide a Certificate of Insurance evidencing the coverages required by the Agreement.  The Certificate of Insurance failed to disclose that the policy had a $900,000 deductible. Wal-Mart contends that Sealand failed to provide a Certificate of Insurance that evidenced the coverage Sealand agreed to provide.

Sealand's argument is misplaced. Sealand agreed to provide $1,000,000 in liability insurance coverage.  It failed to do so. Unbeknownst to Wal-Mart, Sealand negotiated and contracted with AGCS for the $900,000 deductible and therefore as the named insured, and based on the clear language of the MSA, Sealand is responsible for the deductible, not Wal-Mart. The Court finds that Sealand breached its agreement to provide $1,000,000 in liability insurance coverage. In other words, to the extent that Wal-Mart is cast in judgment, Sealand will be responsible for the $900,000 deductible. Furthermore, because the MSA requires Sealand to provide a defense, the Court finds that Sealand will be responsible for

defending Wal-Mart since November 3, 2016, when Wal-Mart demanded that Sealand defend it against Plaintiff's claims which arose from the death of her husband while performing services on behalf of Sealand.

*AGCS*

Wal-Mart argues that AGCS is liable *in solido* with Sealand to provide a defense. AGCS contends Wal-Mart has failed to carry its burden of proving its status as an additional insured on the AGCS policy and furthermore, that its duty to defend only applies in excess of the $900,000 deductible. Wal-Mart relies on the ACGS policy which provides that "[t]he terms of this insurance including those with respect to [ ] our right and duty to defend any "suits" seeking those damages [ ] apply irrespective of the application of the deductible amount."[36]

AGCS argues that the MSA between Sealand and Wal-Mart is governed by Louisiana law and that the LCAIS voids the insurance requirements because the MSA is a "construction contract" as defined under the LCAIS. For the reasons set forth above, and the reasons set forth in our previous Memorandum Ruling regarding this issue, the Court finds this argument without merit. Based on our previous rulings Arkansas law applies to the MSA and therefore, the LCAIS not applicable.[37]

Section 10 of the MSA[38] provides the following insurance requirements:

a)   Commercial General Liability Insurance with minimum limits of at least $1,000,000.00 per occurrence and a $2,000,000.00 aggregate;

---

[36] Wal-Mart exhibit G, p. 22, General Conditions, (B)(3).
[37] See Memorandum Ruling and Judgment issued 10/25/2019, Doc. 63 and 64.
[38] Doc. 73-10.

b)      Contractor's insurance shall be primary, non-contributory and not excess coverage;

c)      Each commercial general liability policy shall:

i. Name Wal-Mart Stores, Inc., its subsidiaries and affiliates as additional insureds;

ii. Provide defense coverage as an additional benefit and not within the limits of liability;

iii. Contain a waiver of subrogation in favor of Wal-Mart;

iv. Be issued on an occurrence basis;

v. Contractor shall provide to Wal-Mart one or more Certificates of Insurance evidencing the coverages required by this agreement;

vi. Contractor shall be in material breach of this agreement if Contractor breaches or fails to comply with any of its obligations under this Section.

The AGCS policy provides under General Conditions the following provision:

**1. Blanket Additional Insured**

"In consideration of the premium charged, it is agreed that this policy shall include as additional insured any person or organization to whom the named insured has agreed by contract or agreement to provide coverage, but only with respect to operations performed by or on behalf of the named insured and only with respect to occurrence subsequent to the making of such contract or agreement."[39]

The Court finds that Wal-Mart is an additional insured under the blanket additional insured endorsement of AGCS policy.

Wal-Mart argues that AGCS is liable *in solido* with Sealand; Wal-Mart contends that the AGCS policy provides coverage regardless of any deductible amount listed on the

---

[39] Doc. 73-13, p. 14.

policy. Wal-Mart argues that the policy places no limits upon the duty to defend.[40] Wal-Mart maintains that AGCS should have defended Wal-Mart against Plaintiff's claims regardless of the deductible because Plaintiff's claims arise from operations performed by or on behalf of Sealand, the named insured.

AGCS maintains that it does not owe a defense until the defense costs exceed the $900,000 deductible. AGCS relies on the following policy language under the section labeled "Marine Services Liability Policy Common Conditions" which states that "[a]ll coverages under this policy are subject to the following conditions, unless specifically stated otherwise in the Coverage Form."[41] The policy further states the **LIMITS OF INSURANCE:**

> \*\*\*
> 2. The General Aggregate is the most we will pay on any one policy year for the sum of:
>
>> a.      Medical expenses under coverage C of the Commercial General Liability Coverage Form;
>>
>> b.      Damages and "defense costs" under Coverage A of the Commercial General Liability Coverage Form
>
> \*\*\*
>
> 4. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
>
>> a.(1) **Damages and "defense costs"** under Coverage A of the Commercial General Liability Coverage Form ....[42]

---

[40] Wal-Mart exhibit G, p. 32, at (I)(A)(1)(a) labeled Insuring Agreement.
[41] Wal-Mart exhibit G, p. 20, doc. 73-13.
[42] Id.

The policy declarations provide a limit of $1,000,000 with a $900,000 deductible for each occurrence.[43] Concerning the deductible, the policy provides as follows:

**B.    DEDUCTIBLES**

**1. Our obligation under the insurance provided, to pay** damages, medical payments and **"defense costs" on your behalf applies only to the amount** of damages medical payments and **"defense costs" in excess of any deductible amounts stated in the Declarations or attached Schedules(s).**

2. The deductible amount under either all coverages combined (except Protection and Indemnity) <u>or</u> to Protection and Indemnity, to all applicable damages, medical payments and "defense costs" because of any injury or damages as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. The terms of this insurance, including those with respect to:

a. Our right and duty to defend any "suits" seeking those damages; and

\*\*\*

apply irrespective of the application of the deductible amount.[44]

**DEFINITIONS**

5. "Defense costs" means payments allocated to a specific claim or "suit" for its investigation, settlement or defense, including:

a. Attorney fees and all other litigation expenses.

\*\*\*[45]

---

[43] Id. p 1.
[44] Id. p. 21 (emphasis added).
[45] Id. p. 26.

AGCS thus maintains that its policy clearly states that defense costs are not paid until the deductible is met.

Concerning AGCS's liability *in solido* with Sealand, Wal-Mart contends that because the Certificate of Insurance was silent as to the $900,000 deductible, the Certificate is a misrepresentation of the actual coverage afforded Sealand by the AGCS policy. Wal-Mart asserts the proper disclosures by Sealand and Arthur J. Gallagher, Risk Management Services, Inc.[46] on behalf of AGCS, would have put it on notice that the policy under which Wal-Mart is an additional insured did not comport with the insurance requirements set forth in the MSA. Wal-Mart seeks to hold AGCS independently liable *in-solido* for misrepresenting the insurance available to Wal-Mart as an additional insured. In other words, the absence of the $900,000 deductible was a material omission and AGCS should be estopped from asserting the deductible to liability coverage.

Wal-Mart relies on Louisiana Civil Code article 1797[47] to support its argument that two parties can be solidarily liable although the obligation derives from a different source for each obligor. Wal-Mart argues that AGCS's material misrepresentation, (material omission) should prohibit AGCS from asserting the deductible to liability coverage. Wal-Mart cites a West Virginia Supreme Court case, *Jeffrey L. Marlin, Sr., eta l v. Wetzel Board of Education, et al*, 212 W.Va. 215 (2002) which explained as follows:

> In the instant case we focus our analysis on the first exception, whether the insurer or its agent made a misrepresentation by issuing a certificate of insurance at the inception of coverage which resulting in the

---

[46] Gallagher issued the certificate of insurance on behalf of AGCS.

[47] An obligation may be solidary though it derives from a different source for each obligor.

Board not having the coverage it desired.  Our research indicates that "[i]t is well settled that an insurer may be equitably estopped from denying coverage where the party for whose benefit the insurance was procured reasonably relied upon the provisions of an insurance certificate to that party's detriment." *Lenox v. Excelsior Insurance Co.,* 225 A.D. 2d 644, 645, 679 N.Y.2d 749, 750 (1998) (citations omitted). See also *Zurich Ins. Co. v. White,* 221 A.D.2d 700, 633 N.U.S.2d 415 (1995) (insurer was estopped from asserting deductibles to liability coverage when certificate of insurance represented there were no deductibles); *Criterion Leasing Group v. Gulf Coast Plastering & Drywall,* 582 So.2d 799 (Fla. App. 1991) (under doctrine of promissory estoppel, insurer was prevented from denying workers' compensation coverage to subcontractor's employee when subcontractor was named as "coinsured" on certificate of insurance); *Bucon Inc. v. Pennsylvania Mfg. Assoc. Ins. Co.,* 151 A.D.2d 207, 547 N.Y.S. 29 925 (1989) (insurer estopped from denying the existence of plaintiff's coverage after issuing certificate of insurance identifying the plaintiff as an "additional insured"). "A certificate of Insurance is an insurance company's written statement to its customer that he has insurance coverage, and the insurance company is estopped from denying coverage that the Certificate of Insurance states is in effect." *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Cas. Co.,* 482 N.W.2d 600, 603 (N.D. 1992).

We therefore hold that a certificate of insurance is evidence of insurance coverage and is not a separate and distinct contract for insurance. However, because a certificate of insurance is an insurance company's written representation that a policyholder has certain insurance coverage in effect at the time the certificate is issued, the insurance company may be estopped from later denying the existence of that coverage when the policyholder or the recipient of a certificate has reasonably relied to their detriment on a misrepresentation in the certificate." *Id.* at 473.

Wal-Mart contends that AGCS ignores its own policy language which states that any reference to the words "you or your" refer to the Named Insured which is Sealand, not Wal-Mart. In other words, Wal-Mart argues that under the "DEDUCTIBLES"[48]  section,

---

[48]  "Our obligations under the insurance provided to pay damages ..." defense costs" on your behalf applies on to the amount of damages ... and "defense costs' in excess of any deductible amounts stated in the Declarations or attached Schedule(s)."

the language[49] expressly states that the deductible applies only to Sealand. Wal-Mart then points to AGCS policy language which states:

> 3. The terms of this insurance including those with respect to
>
>> a. our right and duty to defend any "suits" seeking those damages; and
>>
>> b. Your duties in the event of an "occurrence", claim, or "suit"
>>
>> apply irrespective of the application of the deductible amount.[50]

Wal-Mart then argues that this language obligates AGCS to pay defense costs from dollar one, irrespective of the application of the deductible amount. Additionally, Wal-Mart contends that AGCS is liable for the deductible amount for its material omissions contained in the Certificate of Insurance was well as the policy language noted above.

AGCS contends that its policy provides that defense costs are not owed until such amounts exceed the policy's $900,000 deductible. AGCS argues that because the Certificate contained no statement about the AGCS policy deductible and given the express disclaimer language on the Certificate itself, any reliance on the Certificate without review of the policy is patently unreasonable. AGCS cites to Louisiana cases which provide that Certificates of Insurance are not part of the insurance policy and are not to be used in construing its terms and provisions. See *Hanover v. Superior Labor Services, Inc.* 2017 WL 3621242, *3-4 (E.D. La. 8/21/2017); *Arch Specialty Ins. Co. v. C&G Const. of La., Inc.* 2014 WL 3662837, *5 (E.D. La. 7/23/2014); *Citgo Petroleum Corp. v. Yeargin, Inc.,* 690 So.2d 154, 164 (La.App.3d 2/19/97), 701 So.2d 169 , *writ denied,* 701 So.2d 170 (La.

---

[49] Wal-Mart exhibit G, p.21.
[50] Id. p. 21.

9/19/97);  *All Crane Rental of Ga. Inc. v. Vincent,* 47 So.3d 1024, 1029-1030 (La. App. 1 Cir. 9/10/10). Furthermore, AGCS contends that Louisiana law prohibits allowing a policy to be modified by a Certificate of Insurance.   Specifically, Louisiana Revised Statute 22:890 provides:

> F. The provisions of this Section shall apply to all certificate holders, policyholders, insurers, insurance producers, and certificate of insurance forms issued as a statement or evidence of insurance coverages on property, operations, or risks located in this state, regardless of where the certificate holder, policyholder, insurer, or insurance producer is located.
>
> G.  A certificate of insurance form which has been issued in accordance with this Section and properly executed and issued by a property and casualty insurer or an insurance producer, shall constitute a confirmation that the referenced insurance policy has been issued or that coverage has been bound notwithstanding the inclusions  "for information purposes only" or similar language on the face of the certificate. A certificate of insurance is not a policy of insurance and does not affirmatively or negatively amend, extend, or alter the coverage afforded by the policy to which the certificate of insurance makes reference.  A certificate of insurance shall not confer to a certificate holder new or additional rights beyond what the referenced policy or any validly executed endorsements of insurance provides.

Louisiana Revised Statute 22:890; See generally, *Advantage Roofing & Constr. of Louisiana, Inc. v. Landmark Am. Ins. Co.*, 2018 WL 1955516, at *9-10 (M.D. La. Mar 13, 2018).

AGCS also relies on language contained on the face of the Certificate of Insurance as follows:

> THIS   CERTIFICATE   IS   ISSUED   AS   A   MATTER   OF INFORMATION   ONLY   AND   CONFERS   NO   RIGHTS   UPON   THE CERTIFICATE   HOLDER.      THIS   CERTIFICATE   DOES   NOT AFFIRMATIVELY   OR   NEGATIVELY   AMEND,   EXTEND   OR   ALTER THE   COVERAGE   AFFORDED   BY   THE   POLICIES   BELOW.[51]   THIS

---

[51] This language is required by LAC tit. 37, Pt XIII, § 8101(C) in response to the Department of Insurance's concern that some certificates were being issued that purported to "alter, amend, or extend the coverage provided by the reference insurance policy in violation of R.S. 22:890."

CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A
CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED
REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE
HOLDER.

\*\*\*\*

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the
policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to
the terms and conditions of the policy, certain policies may require an
endorsement. A statement on this certificate does not confer rights to the
certificate holder in lieu of such endorsements(s).

\*\*\*\*

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED
BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE
FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY
REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR
OTHER DOCUMENT WITH RESPECT TO WHICH THIS
CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE
INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS
SUBJECT TO ALL THE TERMS EXCLUSIONS AND CONDITIONS OF
SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY
PAID CLAIMS.[52]

AGCS argues that Wal-Mart's reliance on the certificate's contents in lieu of the

provisions of the actual policy is unreasonable. AGCS relies on *Johnson v. Seacor Marine*

*Corp.,* 404 F.3d 871 (5th Cir. 2005). In *Seacor*, the Fifth Circuit ruled that Seacor could

not satisfy the elements on a theory of negligent misrepresentation[53] because the Certificate

of Insurance contained no incorrect information. Specifically, the Certificate failed to

provide that an exclusion applied. Additionally, the Fifth Circuit ruled that Seacor failed to

---

[52] Wal-Mart exhibit F. Doc. 73-12.
[53] The elements are: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that
duty; and (3) damages to the plaintiff as a result of justifiable reliance on the misrepresentation. *Brown v. Forest Oil
Corp.,* 29 F.3d 966, 969 (5th Cir. 1994).

establish the elements[54] of an equitable estoppel claim because Seacor could not demonstrate that it relied on the insurance certificate considering that Seacor did not review it.

In the instant case, the AGCS policy had a $900,000 deductible for a $1,000,000 policy.  The MSA required Sealand to provide $1,000,000 in coverage with a $2,000,000 aggregate.  Section 10 of the MSA[55] further required Sealand to "provide one or more Certificates of Insurance evidencing the coverages required by the Agreement." The plain language of the certificate unambiguously states that the certificate is for informational purposes only and is subject to all terms and conditions of the policy, one of which is the $900,000 deductible. The Court finds that the Certificate of Insurance does not alter or amend the terms, conditions or limits of the AGCS policy.

## CONCLUSION

The Court finds that Sealand was obligated to provide $1,000,000 in coverage and failed to provide the coverage as required by the MSA. The Court further finds that Wal-Mart is an additional insured under the AGCS policy. Therefore, Sealand is in breach of the MSA and liable to Wal-Mart for any damages should Wal-Mart be cast in judgment— a determination to be made at a later date; Sealand is also liable for defense costs since Wal-Mart made demand for defense on Sealand on November 3, 2016. The Court finds that the AGCS policy contains a $900,000 deductible which is not modified by the

---

[54] The elements are: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance.
[55] Wal-Mart exhibit D, Doc. 73-10.

Certificate of Insurance.  Consequently, the AGCS policy will apply after the deductible is met.

      **THUS DONE AND SIGNED** in Chambers on this 20th day of April, 2021.

                                  **JAMES D. CAIN, JR.**
                        **UNITED STATES DISTRICT JUDGE**